# UNITED STATES DISTRICT COURT
for the
Southern District of Texas



FILED
MAY 28 2019
David J. Bradley, Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH INSTAGRM USER ID big_coroster (296733103) THAT IS STORED AT PREMISES CONTROLLED BY INSTAGRAM LLC. | Case No.<br>H19-0966M |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A" and the Affidavit In Support of the Search Warrant)

located in the _____Southern_____ District of _____Texas_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B" and the Affidavit In Support of the Search Warrant)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1951 | Interference with Commerce by Robbery |

The application is based on these facts:
(See the Affidavit In Support of Search Warrant)

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Applicant's signature
PAUL LOWREY  HSI TFO
Printed name and title

Sworn to before me and signed in my presence.

Date: May 28, 2019

Judge's signature
Frances H Stacy  United States Magistrate Judge
Printed name and title

City and state: Houston, Texas

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
INSTAGRM USER ID big_coroster
(296733103) THAT IS STORED AT
PREMISES CONTROLLED BY
INSTAGRAM LLC.

Misc. No. **H19-0966M**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Paul Lowrey, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram user ID that is stored at premises owned, maintained, controlled, or operated by Instagram LLC. ("Instagram"), a social networking company owned by Facebook, Inc. and headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Instagram LLC to disclose to the government records and other information in its possession, further described in Section I of Attachment B, pertaining to the subscriber or customer associated with the user ID. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the information described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2. I am a Task Force Officer with the **Homeland Security Investigations**, and have been since **August of 2018**. Affiant is Detective P. Lowrey, a certified peace officer reputably employed by the Houston Police Department (HPD) and currently assigned to the Gang Division, Multi-Agency Gang Investigative Unit. Affiant has been a police officer assigned as an investigator to Gang Division since 2014. Affiant has investigated and dismantled criminal organizations for the last 6 years. Affiant is a Task Force Officer (TFO) assigned to Homeland Security Investigations (HSI) Gangs South group at the Texas Anti-Gang Center. Affiant is currently investigating a series of violent crimes that are connected by firearms analysis, incident reports, gang intelligence and that Affiant has reason to believe were perpetrated by members of the criminal street gang "100 Percent Third Ward" also known as "103", and the "Early Boys" criminal street gang..

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of **18 USC 1951 (a) Interference with Commerce by Robbery and 18 USC 924 (c)(1)(A) Using and Carrying a Firearm during and in Relation to a Crime of Violence** have been committed by **Bernard Robinson, Corey Bishop and Leonard Murphy**. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## JURISDICTION

5.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Houston, Harris County, Texas which is within the Southern District of Texas.

## PROBABLE CAUSE

6.  **Affiant is aware, based on conversations with Houston Police Homicide Detectives, other Gang Detectives, and Federal Agents, that there exists a criminal street gang in the Third Ward neighborhood of Houston, Texas, titled "100% Third Ward" or "103" for short, of which the Houston Police Department has documented 147 persons as members. Affiant has reviewed published crime data and corresponding criminal investigations for the area that members of 103 reside and frequent and knows that this area currently has one of the highest violent crime rates in the city of Houston and the majority of violent incidents have direct attribution or affirmative links to members of the criminal street gang 103.**

7.  **Affiant learned from speaking with other Gang Detectives that 103 was formed under a group called the Third Ward Players. Affiant learned that although 103 began as an association of persons related to Third Ward, over the last four years investigations of criminal activity have yielded strong evidence that 103 is a criminal organization. During these investigations, members of 103 have been indicted in Harris**

County, Texas for crimes ranging from murder, armed bank robbery, gun store burglaries, strong arm robberies, auto theft, burglary and trafficking narcotics.

8. Your Affiant was informed that 103 members typically utilize stolen vehicles to commit crimes such as drive-by shootings, aggravated assaults, robberies and murder, so that the vehicles utilized are not easily tied to anyone in the gang by law enforcement. Affiant has read numerous criminal reports associated with 103, listened to many jail call conversations between 103 members and has been told by other officers and agents that the 103 gang relies on certain gang members, who specialize in auto theft, to provide the gang with "stolos", stolen vehicles, in order to commit crimes throughout the city.

9. Affiant further learned and has personally viewed social media that verifies that members of 103 utilize social media, including Instagram, and cellular phones, as daily means of communication among 103 members, coordinate their conspiracies and as a way to publically represent membership and claim responsibility for crimes in order to establish and maintain status among its members.

10. Affiant learned from speaking with other Gang Detectives that 103 is an umbrella gang which is encompassed by other subsets, which collaborate in criminal activity and assist with maintaining the status of 103 and Third Ward by participating in retaliatory shootings and murders against members of gangs that are rivals to 103, such as Young Scott Block. Affiant learned that one of these subset gangs is called "Early Boys", and its members commonly use 103 hand signs and act in concert with members of the greater 103 organization.

11. Your Affiant spoke with HPD South Central Crime Suppression Team (SC CST) Officer R. Saini, a certified peace officer reputably employed by HPD, and Affiant

reviewed HPD Incident 952572-18, authored in part by HPD Officer F. Rahimzadeh, a certified peace officer reputably employed by HPD. Officer Saini stated that Officer Rahimzadeh and his partner were dispatched to a shooting that just occurred at approximately 11:17 PM on July 26, 2018, located at 2419 Riverside Dr., Houston, Harris County, Texas which your Affiant knows to be in the Southern District of Texas. Officer Saini told your Affiant that the location is a hotel and it is named America's Best Value Inn.

12. Officer Rahimzadeh wrote that upon arrival at the hotel, she found S. Ramsin Jadav, who Officer Rahimzadeh believed to be credible and reliable, lying on the floor bleeding in the front office of the hotel. Mr. Jadav told Officer Rahimzadeh that he works at America's Best Value Inn and that earlier he went outside to the parking lot area where he saw a black male. Mr. Jadav continued that the black male and other black males entered the hotel office, shot Mr. Jadav, robbed the business of U.S. Currency, and that the suspects may have stolen Mr. Jadav's cell phone.

13. Officer Rahimzadeh wrote that she interviewed Lisa St. Abin, who Officer Rahimzadeh believed to be credible and reliable, who stated that she was staying in Room 25 of the hotel. Ms. St. Abin stated that she had heard two gun shots and then saw three males get inside of a black SUV and drive away.

14. Officer Rahimzadeh wrote that she spoke to Andy Patel, a person that works at the hotel and a person that Officer Rahimzadeh believed to be credible and reliable, and who agreed to show Officer Rahimzadeh video surveillance footage of the incident. Officer Saini told your Affiant that he has reviewed the surveillance footage shown to Officer Rahimzadeh, and your Affiant offers the following description of Officer Saini's observation of the video which is complete with sound.

15. Prior to the robbery, a black male wearing a black shirt walked around the building and into the front office at approximately 10:36 PM. Your Affiant recognized the black male as Leonard Murphy from social media accounts and from a Harris County Jail 2018 booking photograph. Murphy asked Mr. Jadav about room rates, whether the hotel accepted cash or credit, and Murphy then asked for a cup of water, then left the office. Murphy is seen exiting around the corner of the hotel.

16. A dark colored SUV then pulled into the hotel parking lot at approximately 11:11 PM coming from the same direction that Murphy left, circled the lot, and then parked in front of the hotel office. A black male in a gray sweatshirt hoodie (this incident occurred in July in Houston) exited the SUV and walked around the lot, looking around from back and forth, and your Affiant believes that the person was acting as a lookout for the robbery crew.

17. Mr. Jadav walked out of the front office and confronted a black male, who had a make shift mask covering the lower part of his face, then quickly tries to walk back into the office. Mr. Jadav was caught from behind by the male in the mask and the two began to struggle at the front door of the office, eventually with the male in the mask producing a firearm and holding the gun to Mr. Jadav's head.

18. Mr. Jadav and the suspect continue to struggle and walk into the office, off camera to the left; however, the two can be seen struggling in the reflection of the glass surrounding the office. Another black male wearing a yellow/tan long sleeved shirt, ripped blue jeans and a red hoodie wrapped around his face is seen walking into the doorway, and holding the front door open. Your Affiant recognized the male as Kendrick Johnson from social media and Harris County Jail 2018 booking photographs.

19. Mr. Jadav and the masked male can be heard, and sometimes seen in the reflection of the glass, struggling, and Johnson yells, "Mook!" while motioning for someone to come toward him. Johnson yells again, "Mook, move!" and the thin, wiry black male lookout, wearing a gray hooded sweatshirt, runs to Johnson and passes Johnson a pistol. (Your Affiant is aware that Mook, or Mook mook, is the nickname of Bernard Robinson. Johnson runs toward Mr. Jadav and the masked suspect with his gun, and in the reflection of the glass, Johnson hits Mr. Jadav in the head and the neck area with his pistol, then fires a shot into the ceiling. Johnson and Mr. Jadav move off to the left of the glass reflection and the masked suspect enters the office and begins to rifle through the desk drawers.

20. Johnson can be seen again in the reflection and gun shots are audible, as are the screams of Mr. Jadav. Your Affiant spoke with HPD SC CST Officer T. Villa, who is a certified peace officer reputably employed by HPD, who told your Affiant that he recognized the masked suspect as Corey Bishop from his eyes, hairline, upper facial features, and a unique large mole on Bishops upper left check. The three suspects run out of the office, get into the dark colored SUV, and the SUV drives away.

21. Affiant read HPD Report# 1055949-18, authored in part by Officer D. Combs, a certified peace officer reputably employed by HPD who I believe to be credible and reliable. Officer Combs documented that on August 19, 2018 at approximately 8:49 A.M., he was dispatched to a Burglary of a Motor Vehicle call for service located at 701 T.C. Jester Boulevard, Houston, Harris County, Texas. Officer Combs wrote that he met one of the complainants, Alexander Grant, who Officer Combs believed to be credible and reliable. Mr. Grant told Officer Combs that he had parked his vehicle, a 2013 Ford F-150 pickup truck, Texas plate CNF9254, at the location at approximately 9:00 P.M. on August 18, 2018.

Mr. Grant then told Officer Combs that when he woke up on August 19, he walked out to the parking lot to find his truck missing and his girlfriend's vehicle burglarized. Mr. Grant stated that he called the police and reported his truck as stolen. Officer Combs typed that he informed dispatch of the stolen truck's license plate and description and asked that a "GB", or General Broadcast, be made city wide to marked police units so that other officers would know to look for the freshly stolen vehicle.

22. Your Affiant read HPD Report# 1055949-18 Supplement 6 authored by HPD Officer D. Gil, a certified peace officer reputably employed by HPD who I believe to be credible and reliable. Officer Gil wrote that on August 23, 2018 at approximately 9:20 A.M. HPD Officer N. Escobar, a certified peace officer reputably employed by HPD who I believe to be credible and reliable, observed a Ford F150 matching Mr. Grant's vehicle with license plate CNF9254 in the 5200 block of Rand Street, Houston, Harris County, Texas.

23. Officer Escobar radioed to other officers and stated that the license plate return from TCIC/NCIC showed the truck stolen on August 19, 2018 and that the truck was occupied by three unknown males. Officer Escobar followed the stolen vehicle and directed marked police units the vehicle in the 4700 block of Rand Street, Houston, Harris County, Texas. Officer Gil wrote that HPD Officers A. Lyons and M. Holt, both certified peace officers reputably employed by HPD, responded to 4700 block of Rand Street and activated their emergency equipment. Officer Gil stated that the driver, later identified as Leonard Murphy, and front passenger, later identified as Bernard Robinson, exited the stolen vehicle and attempted to evade officers by running away.

24. Officer Gil wrote that the back passenger, Corey Bishop remained seated in the vehicle and was arrested by HPD Officer Lyons without further incident and placed in

the back of a locked patrol vehicle. Officer Gil typed that Leonard Murphy was located and arrested by Officer Lyon and secured in a patrol car. Officer R. Johnson, a certified peace officer reputably employed by HPD, located and arrested Bernard Robinson and he was secured in a patrol vehicle. Upon a search of the vehicle a loaded firearm and mask were found in the backseat where Corey Bishop had been found.

25. Affiant has reviewed HPD databases and found BISHOP documented as a 103 gang member and BISHOP meets two of the seven state designated criteria as he has 1) been arrested with 103 gang members, HPD Incident #1055949-18 and 2) has been captured on video during a robbery with 103 gang members Leonard Murphy, Bernard Robinson and Kendrick Johnson, HPD Incident# 952572-18, at America's Best Value Inn located at 2419 Riverside, Houston, Harris County, Texas. Affiant has reason to believe and does believe that based on the facts listed above, Corey BISHOP is a member of the criminal street gang 103.

26. As part of my investigation, your Affiant has reviewed the target social media account identified as big_coroster (296733103) and have confirmed the photos of the account hold are of Corey Bishop.

27. Instagram LLC. owns and operates a free-access social networking website of the same name that can be accessed at http://www.instagram.com. Instagram is an online photo-sharing, video-sharing and social networking service that enables its users to take pictures and videos, apply digital filters to them, and share them on a variety of social networking services, such as Facebook, Twitter, Tumblr and Flickr.

28. Instagram asks users to provide basic contact and personal identifying information to Instagram, either during the registration process or thereafter. This information may include

the user's full name, birth date, gender, contact e-mail addresses, Instagram passwords, Instagram security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

29. Instagram users can select different levels of privacy for the communications and information associated with their Instagram accounts. By adjusting these privacy settings, an Instagram user can make information available only to himself or herself, to particular Instagram users, or to anyone with access to the Internet, including people who are not Instagram users, by various means, including by linking to other social media platforms, such as Twitter and Facebook. Instagram accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Instagram.

30. If an Instagram user does not want to interact with another user on Instagram, the first user can "block" the second user from seeing his or her account. Instagram retains records of users who have been both blocked as well as records of users who have been added and then blocked at a subsequent time.

31. Instagram users can create profiles that include photographs, sayings, lists of personal interests, and other information. Instagram users can also post updates about their whereabouts and actions, as well as links to videos, photographs, or photographs of other users. Instagram users can also post hashtags to their posts which will link their content with a particular subject so that it can be accessed and referenced by other users who are interested in the same content. In addition, Instagram users can tie photos to specific geographic locations to their images via "geo-tags", thereby revealing their geographic locations at particular dates and times.

32. Instagram contains a unique feature known as Instagram Direct. Instagram Direct allows users to communicate via a private messaging application with one another while each person is logged in to Instagram. These chat messages cannot be viewed by the general public, even if the user has the lowest security settings. Images and videos can be sent to small groups of up to 15 users and allows users to share their locations with a private group of people. Instagram Direct also allows for the sending of website links inside of private messages.

33. An Instagram user can also save photographs and videos in a format called "Archive" which will let users hide posts in a private storage area, out of visibility for other users.

34. Instagram also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Instagram, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Instagram profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

35. Social networking providers like Instagram typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Instagram users may communicate directly with Instagram about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Instagram typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

36. As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an Instagram user's IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Instagram account at a relevant time.

37. Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation.

38. Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner.

39. Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example,

information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

40. Therefore, the computers of Instagram are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

41. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

## CONCLUSION

42. Based on the forgoing, I request that the Court issue the proposed search warrant.

43. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

44. Because the warrant will be served on Instagram who will then compile the requested records and information at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Paul Lowrey
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to before me on ___May 28___, 2019, and I find probable cause

Frances H. Stacy
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Instagram profile(s) that are stored at premises owned, maintained, controlled, or operated by Instagram LLC., a company headquartered in Menlo Park, California. Specifically,

    big_coroster (296733103)

for the time period beginning July 1, 2018 through August 30, 2018.

## ATTACHMENT B

**Particular Things to be Seized**

I. **Information to be Disclosed by Instagram**

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, including any messages, records, files, logs, images, videos, or information that have been deleted but are still available to Instagram, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All subscriber information, including for user IDs: full name, user identification number, birth date, gender, contact e-mail addresses, Instagram security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Instagram activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; comments; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; follower lists, including the followers user identification and account names; rejected or blocked "followers" requests; comments; tags; and information about the user's access and use of Instagram applications;

(e) All other records of communications and messages made or received by the user, including all private messages, Instagram Direct history;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Instagram images and all non- Instagram webpages and content that the user has "liked";

(i) All past and present lists of followers created by the account;

(j) All records of Instagram searches performed by the account;

(k) The types of service utilized by the user;

(l) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(m) All privacy settings and other account settings, including privacy settings for individual Instagram posts and activities, and all records showing which Instagram users have been blocked by the account, including the time and date of any changes to the privacy settings; and

(n) All records pertaining to communications between Instagram and any person regarding the user or the user's Instagram account, including contacts with support services and records of actions taken.

## II. Information to be seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18 USC § 1962(d) and 18 USC § 1959 involving the Subject Accounts, including information pertaining to the following matters:

a. membership in the 103 criminal street gang;

b. the robbery of America's Best Value Inn on July 26, 2018;

c. evidence of the commission of a VICAR Conspiracy, and evidence of the existence of the enterprise, and the members and associates of that enterprise;

d. Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation along with any planning and coordination that occurred before, during and after the offense was committed;

e. Evidence of co-conspirators, known and unknown, who participated in this offense and other gang activity and offenses and targeted victims, known and unknown; and

f. Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts; and

g. Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Instagram LLC, and my official title is _____. I am a custodian of records for Instagram LLC. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Instagram LLC, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of Instagram LLC; and

c. such records were made by Instagram LLC as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____
Date                                Signature